## SARAH W. MAY, Appellant, v. CLAUDIA MAY et al.

### Division One, June 15, 1905.

1. **FINAL SETTLEMENT: Conclusiveness: Notice to Ward: Exhibit: Partition.** In order that a final settlement of the curator and guardian of the minor's estate shall be conclusive and bar a further examination into the correctness of his accounts, it must be made in accordance with the statute in force at the time it is made. And where the statute required the guardian and curator to make a just and true exhibit of the account between herself and her ward (a daughter) and file the same in the court, and to cause a copy thereof, together with a written notice stating the day on which and the court in which she would make such settlement, to be delivered to the ward at least four weeks before the first day of the term of the court at which the settlement is to be made, and no exhibit and written notice were delivered to the ward, the court was not authorized to permit a settlement to be made, and the settlement if made and approved was not a final settlement and cannot have the force and effect of one, but the account between the curator and the ward may be adjusted in a subsequent suit in partition to which they are parties.

2. ———: **Without Notice.** A final settlement by a curator and guardian without notice to the ward can have no other or greater force than an annual settlement. As such it is merely prima facie evidence of the facts therein contained—evidence which may be rebutted and overcome.

3. ———: **Partition: Homestead: Charged With Debt.** Money found to be due from the curator to her ward cannot be charged against the curator's homestead, in a partition suit.

4. ———: ———: **Resulting Trust.** In a suit for the partition of lands, purchased with the ward's money, the title being taken in the name of the curator, the court can, where both are parties, decree the land to belong to the ward.

Appeal from Louisiana Court of Common Pleas.—*Hon. D. H. Eby,* Judge.

REVERSED AND REMANDED (*with directions*).

*Pearson & Pearson* for appellant.

(1) No proceedings can be maintained, nor judgment had, against the plaintiff in her individual capacity for matters connected with, or in any way growing out of the administration of the estate of her wards, while she was guardian and curator. A circuit court has no jurisdiction over a guardian or curator touching the matters connected with the administration of her ward's estate, unless there is a breach of the conditions of her bond, and the action is based thereon. Cohens v. Atkins, 73 Mo. 167; Garton v. Botts, 73 Mo. 277; Clark v. Sinks, 144 Mo. 453; Smith v Hauger, 150 Mo. 444. (2) "A judgment of the probate court, finally settling and distributing an estate, and discharging a curator, is a final judgment, which after the expiration of the term at which it is rendered, cannot be set aside by that court at all, and not by any other court, except in a direct proceeding in equity on the ground of fraud perpetrated before the court, in the very act of procuring a judgment. And this implies that the party shall have been brought into court by a summons, and not by

a mere notice from one to the other." Smith v. Hauger, 150 Mo. 444. Patterson v. Boothe, 103 Mo. 417. (3) "The only way in which final settlements of administrators can be impeached and the correctness of credits allowed therein be inquired into, is by a direct proceeding to set aside such settlements for fraud. They stand upon the same footing as other judgments of courts of competent jurisdiction, and cannot be attacked collaterally. The fact that the court in auditing and adjusting accounts may have erroneously allowed credits to which the administrators were not entitled is not waste or mismanagement by the administrator within the meaning of section 287; but an error of the court in its judgment, which could be corrected by appeal; or if superinduced by fraud on the part of the administrators, by a direct proceeding in equity to set aside the settlements." State ex rel. v. Gray, 106 Mo. 533; State ex rel. v. Carroll, 101 Mo. App. 113. (4) "A domestice judgment rendered by a court of general jurisdiction cannot be impeached by parties to it merely because the record is silent as to the acquirements of jurisdiction." McClanahan v. West, 100 Mo. 320.

*Ball & Sparrow* and *Robert A. May* for respondents.

(1) Under the statute the guardian is required to give notice of final settlement, and such final settlement without notice is at best a partial or annual settlement, and must be treated as such. The decree made without notice was void. Mead v. Bakewell, 8 Mo. App. 554; Hospes v. Branch, 112 Mo. 671. A settlement made without complying with the provision of the statute relative to notice is no final settlement and no judgment can be entered on it. State to use v. Hoster, 61 Mo. 544; Berkshire v. Hoover, 83 Mo. App. 435. This being true, there is no doubt of the power of the probate court to vacate the entry. Any court, whether of common-law jurisdiction, or of limited statutory power,

may, on proper application, vacate any void order or judgment at any time. Mead v. Bakewell, 8 Mo. App. 554. The plaintiff cannot avail herself of the plea that she obtained defendant's receipt in settlement of her guardianship, for "it is the duty of the guardian not to invite the ward to the act of executing a release without a just accounting and full settlement, and the disclosure of every fact necessary to inform the ward and to see that the act of release is of the unbiased will of the ward." An acknowledgment of satisfaction is of no force if ward has not received satisfaction. Mead v. Bakewell, 8 Mo. App. 553; Houts v. Sheperd, 79 Mo. 141; Berkshire v. Hoover, 83 Mo. App. 435. (2) When the questions are such as belong to a court of equity, there can be no reason for suspending the proceedings short of complete justice between the parties. Rozier v. Griffith, 31 Mo. 174. Courts of equity can enforce the trusts between tenants in common and at the same time take an account, etc. Where one joint owner appears to have received more than his share of the estate, the court will direct an account, and will not confine its relief merely to partition. Beck v. Kallmeyer, 42 Mo. App. 570. Any omission or concealment, under these circumstances, that wrongs the estate must be considered as fraudulent, without reference to the motive that dictates it. Clyce v. Anderson, 49 Mo. 41. The obligations of the curator to the ward were greatly increased from the fact that she was her mother, that the ward was young at the time of the settlement, and she was not only her natural guardian, but had given bond as curator of her estate. It was, therefore, doubly her duty to see that her rights were guarded. Clyce v. Anderson, 49 Mo. 42. The court has jurisdiction and authority to adjust all differences between the parties, and to do complete justice while it has the case in hand, and this, too, whether such claims are of a legal or equitable character. Herchenroeder v. Herchenroeder, 75 Mo. App. 286; Green v. Walker, 99 Mo. 73; Real Es-

tate Saving Inst. v. Collonious, 63 Mo. 295. The court has power and authority to decree the title to the real estate in defendant; and to render a personal money judgment against plaintiff for balance found to be due defendant. Dougherty v. Adkins, 81 Mo. 411. The insolvency of plaintiff and her bondsmen furnish an additional ground upon which court of equity will act. Foote v. Clark, 102 Mo. 407. It is the settled practice in this State that adverse and conflicting interests may be contested and settled under the statutory proceedings for partition. Thompson v. Holden, 117 Mo. 127.

BRACE, P. J.—This is an appeal from a decree in partition.

The cause coming on to be heard in the court below was referred to Hon. E. W. Major, who was "directed to hear and decide the whole issue and to report his findings of fact and conclusions of law" to the court— in pursuance of which order, the referee, having heard the evidence, made a voluminous report, setting out at great length his finding of fact and conclusions of law upon every conceivable issue in the case. The following excerpts therefrom furnish a sufficient statement for the purposes of this decision.

"Upon the evidence adduced I find the facts and my conclusions of law to be as folows:

"That Dr. James D. Harris died intestate in the town of Wentzville, St. Charles county, Missouri, on January 6, 1886. That he left surviving him as his heirs at law Sarah W. Harris, his widow, plaintiff in this case, she having since the death of Dr. Harris married Thomas May of Louisiana, Pike county, Missouri; Claudia Harris, his daughter, who afterwards married Robert A. May, both of whom are defendants herein; and Warren Harris, his son. That Sarah W. Harris, now Sarah W. May, is the mother of Claudia Harris, now Claudia W. May, and Warren Harris. That at the time of the death of James D. Harris, his wid-

ow Sarah W. Harris was twenty-nine years of age and his two children, Claudia Harris and Warren Harris, were both minors. . . That Warren Harris died intestate and while yet a minor at the town of Wentzville, St. Charles county, Missouri, in the early part of the year 1893, leaving as his only heirs at law his mother, Sarah W. May, and his sister, Claudia W. May, each of whom I find and conclude inherited one-half of his estate.

"That James D. Harris at the time of his death was the owner of and possessed in fee simple title of a farm of 84.72 acres being part of the west half of section 13, township 47, range 1 east, in St. Charles county, Missouri. Also lot 1 in block 20 in the Railroad Addition to the town of Wentzville, and that the same was the residence and dwelling house of said James D. Harris at the time of his death. . . Also the northeast corner of lot 1 in block 3 in the original town of Wentzville, said piece of ground having a front of 22 feet and running back 66 feet; also the southeast corner of said lot and block in said town, being 22 feet wide and running back 54 feet in Wentzville, and known as the drug store building. That at the time of the death of Dr. James D. Harris the reasonable cash market value of the farm aforesaid was $1,500; and the reasonable cash market value at the time of his residence was $1,500; and the reasonable cash market value at the time of the real estate in lot 1 of block 3 of said town, and known as the drug store building, was $600.

"That Sarah W. Harris administered on her said husband's estate and made final settlement thereof on the 9th day of May, 1893, in the probate court of St. Charles county, and that on said final settlement the estate owed her the sum of $4.12.

"That Sarah W. Harris, plaintiff in this cause, made no election as to what interest she would take in the real estate of her husband, James D. Harris, and that as a homestead interest exceeds in value a dower

in the third part of her husband's lands which she might hold and enjoy during her natural life, I find that her homestead exceeds in value her dower interest in said real estate, and therefore find and conclude as a matter of law that she did then and does now take a homestead interest, the same being the larger interest, and which homestead at the time was and is all of lot 1 in block 20 of the town of Wentzville, and which is part of the land sought to be partitioned by her in this cause. And I further find and conclude that as she took a homestead interest under the law she had no dower or other interest in any of the other lands.

"I further find and conclude as a matter of law that Claudia W. Harris, now Claudia W. May, inherited one-half of her father's real estate, except the homestead, one-half of which she inherited subject to her mother's homestead interest.

"I further find and conclude as a matter of law that Warren Harris inherited one-half of his father's real estate, except the homestead, one-half of which he inherited subject to his mother's homestead interest.

"I further find that on the 8th day of February, 1886, Sarah W. Harris, now Sarah W. May, was by the probate court of St. Charles county, appointed guardian and curator of Claudia W. Harris and Warren Harris, her minor children. . . I further find that both sureties on both bonds are now insolvent, and that plaintiff outside of her interest in the property herein sought to be partitioned has but a small estate, not to exceed $500 or $600, perhaps.

"I further find that James D. Harris at the time of his death carried an insurance policy on his life in the Ancient Order of United Workmen for $2,000, payable to Sarah W. Harris, his wife, Claudia W. Harris, his daughter, and Warren Harris, his son, in equal parts. I further find that Sarah W. Harris, as guardian and curator of Claudia W. Harris and Warren Harris, collected for each of said wards their proportional part

of said insurance in said company, to-wit, $666.67, each. I further find that as guardian and curator of her said minor children, Sarah W. Harris, for the purpose of re-investment, sold by order of the probate court the east one-third of lot 1 of block 3 in said town of Wentzville, having a front of 22 feet by 120 feet, and being the drug store property, for the sum of $600, which she received in full and that the entire proceeds was the property of her said wards. That the said probate court of said county approved said sale on the 13th day of November, 1888.

"I find that Sarah W. Harris, as guardian and curator of Warren Harris, made final settlement in his estate on May 9, 1893, which was a short time after his death, he having died in March, 1893. I further find that in said settlement she only accounted for and charged herself with $666.67, the one-third interest in said life insurance, and $200 as his interest in the proceeds of said drug store which was sold for $600. I find she credited herself with the sum of $7.35 costs and $600 for six years board, clothing, tuition and maintenance, showing a balance due his said estate of $259.32, one-half of which she took as her part of her son's estate and one-half thereof, to-wit, $129.66, she received as guardian and curator of her daughter, Claudia W. Harris.

"I find that she, the said Sarah W. Harris, kept one-third of the proceeds of the sale of said drug store as her own, whereas I find and conclude as a matter of law that she was not entitled to any part thereof and had no legal interest therein.

"I further find that the entire amount of money she received from the insurance for the said Warren Harris and Claudia W. Harris was by her loaned to Charles J. Walker on March 1, 1887, at the rate of seven an one-half per cent and that he paid her the annual interest thereon and kept same continuously until August 26, 1892, and that during all of said time the $666-

.67 of Warren Harris and the $666.67 of Claudia W. Harris was by said curator loaned as stated at the rate of seven and one-half per cent and that all of said interest was collected by said curator, and that she failed to account to Warren Harris and his estate for said interest and failed to account to Claudia W. Harris for said interest.

"I further find and conclude that on May 9, 1893, and being the time that Sarah W. Harris made final settlement of Warren Harris's estate she should have charged herself with the following items:

| | |
|---|---|
| To one-third life insurance .... ...... | $666.67 |
| " interest thereon for five years, 5 mo., 25 days at seven and one-half percent | 274.30 |
| " one-half proceeds sale of drug store.. | 300.00 |
| " interest thereon for 4 years, 5 mo., 26 days at 6 per cent ............... | 80.80 |
| Total ...... ................. ...| $1,321.77 |

I further find that she took credits as follows:

| | |
|---|---|
| By probate costs ...... .. .... ...... | $ 7.35 |
| " six years board, clothing, tuition and maintenance ...... ............. .. | 600.00 |
| Total ....... ......... .... .... | $607.35 |

"Balance in curator's hands is $714.42, being the difference between $1,321. 77 and $607.35. One-half of this amount I find and conclude belonged to Sarah W. Harris and one-half thereof, to-wit, $357.21, belonged to Claudia W. Harris. . .

"I find that Sarah W. Harris made final settlement of the James D. Harris estate on May 9, 1893; and made final settlement of Warren Harris's estate May 9, 1893, and made a so-called final settlement of Claudia W. Harris's estate May 9, 1893, all three estates being settled at the same time and in the same court. I find that Sarah W. Harris in her so-called final settlement on

May 9, 1893, as guardian and curator of Claudia W. Harris, only charges herself with the following items, to-wit:

"To proceeds from life insurance, $666.67; and to $200 as her interest in the sale and proceeds of said drug store which she sold for $600; and to $129.66 as her part of the estate of her brother, Warren Harris, deceased.

"I further find she credited herself in said settlement with the sum of $7.35 costs and $600 for six years board, clothing, tuition and maintenance, showing a balance due said Claudia May of $388.98. I further find that the said Sarah W. Harris kept one-third of the proceeds of the sale of said drug store as her own, whereas I find and conclude as a matter of law she was not entitled to any part thereof and had no legal interest therein.

"I further find and conclude that on May 9, 1893, and being the time that Sarah W. Harris made her so-called final settlement of Claudia W. Harris's estate, she should have charged herself with and accounted for the following items:

| | |
|---|---:|
| To one-third life insurance | $666.67 |
| " interest thereon for 5 years, 5 mo. and 25 days at seven and one-half per cent | 274.30 |
| " one-half proceeds sale of drug store.. | 300.00 |
| " interest thereon for 4 years, 5 mo. and 26 days at six per cent | 80.80 |
| " amount inherited from Warren Harris's estate | 357.21 |
| Total | $1,678.98 |

"I further find she took credits as follows:

| | |
|---|---:|
| By probate costs | $7.35 |
| " six years board, clothing, tuition and maintenance | 600.00 |
| Total | $607.35 |

Balance due Claudia W. Harris, $1,071.63.

"Which said amount of $1,071.63 I find and conclude the said Sarah W. Harris owed her said ward Claudia W. Harris on May 9, 1893, instead of the amount she claimed to owe of $388.98.

"I further find and conclude that these items making the difference in both the estates of Claudia and Warren Harris, minors, were not included in nor embodied in the said settlements of Sarah W. Harris, curator, and were not passed upon by the court in its actions in said estates and were not adjudicated by said court.

"I further find that Claudia W. Harris at the time of said so-called final settlement was of age, and executed to the said Sarah W. Harris a receipt for $388.98 in full payment and satisfaction of her interest in the estates of James D. Harris and Warren Harris, and in full settlement of her accounts as guardian and curator of Claudia W. Harris.

"I further find that said Sarah W. Harris filed said receipt in the probate court of St. Charles county, and that the court made an order of record on that day, to-wit, May 9, 1893, discharging said curator.

"I further find that the said curator Sarah W. Harris did not pay to the said Claudia W. Harris the said sum of $388.98 or any part thereof, or any other amount or moneys.

"I further find that said ward was not informed as to her estate and its conditions and signed the receipt because asked to do so by her mother and her lawyer, and that she did not waive any of her statutory rights.

"I further find that said probate court of St. Charles county, on the 31st day of May, 1901, after hearing the motion of Claudia W. May, formerly Claudia Harris, late a minor, and which I find she filed in said court asking said court to set aside and vacate the order of final settlement and discharge of her guardian, Sarah W. May, formerly Sarah W. Harris, and compel her to make a full and complete settlement of said es-

tate. I find that said court after being fully advised in and concerning said matter made an order and judgment of record on said day sustaining said motion and ordered, adjudged and decreed that the order of final settlement and discharge of said guardian made by the court on the 9th day of May, 1893, be vacated and set aside.

"I further find that said Sarah W. May did not serve any notice of her final settlement upon her ward Claudia May, nor of her intention to make such settlement or ask for a discharge and that said ward did not waive her right to such notice.

"I, therefore, find and conclude that said so-called final settlement and order of discharge of said guardian and curator, Sarah W. May, formerly Sarah W. Harris, was and is vacated and set aside, and that such settlement was not and is not a final settlement. . . .

"I further find as aforesaid that the amount due Claudia W. Harris, now Claudia W. May, on May 9, 1893, was $1,071.63. I further find that she is entitled to interest thereon at the rate of eight per cent from that date to August 13, 1896, 3 years, 3 months and 4 days, which is $279.50.

"I further find that on the —— day of July, 1896, Sarah W. Harris and Claudia Harris sold the farm herein mentioned in St. Charles county, for $1,205.70, and that the entire amount was paid to Sarah W. May, formerly Sarah W. Harris. I find and conclude that Sarah W. Harris was entitled to one-fourth of the proceeds from the sale of said farm, and Claudia Harris to three-fourths of the proceeds of the sale of said land.

"I find that the amount due Claudia Harris from the sale of said land is $904.27, making the total amount due and unpaid Claudia Harris, now Claudia May, from Sarah W. Harris, now Sarah W. May, on August 13, 1896, as follows:

To amount due Claudia Harris on final
    settlement of her estate May 9, 1893..$1,071.63

To interest on said amount from that date
   to August 13, 1896, at eight per cent.   279.50
"  three-fourths proceeds of sale of farm   904.27

   Total amount due ...... ..........$2,255.40

"I further find from the evidence that the real estate described in plaintiff's petition as being situated in the county of Pike and State of Missouri, to-wit, all of lot 25 in block 107 in Baker's Claim Addition to the city of Louisiana, except five feet off the west side of said lot reserved for alley purposes, was purchased by plaintiff for the sum of $2,200, which said sum was paid therefor on the 13th day of August, 1896, and consisted of defendant Claudia May's share of the proceeds of the sale of said farm, and the balance of which purchase money of said Louisiana property consisted of trust funds collected by and held in the hands of the plaintiff, Sarah W. May, as guardian and curator of defendant Claudia May, all of which purchase money of the said Louisiana property was money due and belonging to said Claudia May from plaintiff, and were funds of said Claudia W. May held as trust funds by said plaintiff and which went into and paid for said Louisiana property, the ownership of said purchase money being in said Claudia W. May. . .

"I further find that Sarah W. May has a fee simple title to an undivided one-half interest, so far as the record title is concerned, in the land described in her petition as located in Louisiana, Pike county, but further find and conclude that she holds said title and interest in trust, however, for the benefit of Claudia W. May. . .

"I find and conclude, as a matter of law, that Sarah W. May is entitled to and owns a homestead interest in lot 1 in block 20, in the Railroad Addition to the town of Wentzville in St. Charles county, and described in plaintiff's petition, and is also entitled to and owns an

undivided one-fourth interest in fee simple in and to the remainder interest in said lot.

"I find and conclude as a matter of law that Claudia W. May is entitled to and owns an undivided three-fourths interest in fee simple in and to lot 1 in block 20, in the Railroad Addition to the town of Wentzville, subject to the homestead interest of Sarah W. May.

"I find and conclude as a matter of law that Claudia W. May is also entitled to and owns all of lot 25 in block 107 in Baker's Claim Addition to the city of Louisiana, Pike county, except five feet off of the west side of said lot reserved for alley purposes.

"I find and conclude that she is the owner in fee by purchase of an undivided one-half interest in the said property last above described and is entitled to and the owner of the other half interest in fee, the record title to which is in Sarah W. May, by reason of the fact that said Sarah W. May purchased said one-half interest with the funds of Claudia May as hereinbefore found and placed title thereto in her own name.

"I further find and conclude that she took and now holds the same in trust for the benefit of the said Claudia W. May. I further find and conclude that Sarah W. May is indebted to Claudia W. May on August 13, 1896, over and above the trust funds which she used in the purchase of the said Louisiana property in the sum of $55.40, being the difference between the amount then due said Claudia W. May of $2,255.40 and the $2,-200 used in the purchase of said Louisiana property, which is the said sum of $55.40, and should pay interest thereon at the rate of eight per cent. . . .

"I find from the nature and amount of the property to be divided, that partition in kind of the same cannot be made without great prejudice to the owners thereof. I therefore recommend that partition be had herein and that lot 1 in block 20 in the Railroad Addition to the town of Wentzville, St. Charles county, be sold according to law to the highest bidder for cash

and that the proceeds of said sale be partitioned and divided. between the parties herein according to their respective interests as herein found and that plaintiff pay to Claudia W. May the sum of $55.40 and interest thereon at the rate of eight per cent from August 13, 1896, out of her interests in the proceeds of said sale and that her interest in the proceeds of said sale be charged therewith.

"I further recommend that title in fee to all of lot 25 in block 107 in Baker's Claim Addition to the city of Louisiana, Pike county, except five feet off the west side of said lot reserved for alley purposes, be adjudged and decreed in Claudia W. May and that plaintiff be divested of any and all title therein."

Upon the coming in of the report plaintiff filed objections thereto, which, having been heard, were overruled, the report in all things approved and the following decree entered:

"It is, therefore, considered, ordered, adjudged and decreed by the court that plaintiff, Sarah W. May, formerly Sarah W. Harris, be and she is hereby divested of any right, title or interest, whether legal, equitable, certain or contingent, or present or in reversion or in remainder, in and to lot twenty-five in block one hundred and seven in Baker's Claim Addition to the city of Louisiana, except five feet off of the west side of said lot reserved for alley purposes, and that the absolute fee simple title to said premises be and the same is hereby adjudged and decreed to be in defendant Claudia May and the prayer of plaintiff for partition of the same is hereby denied. It is further considered, ordered and adjudged by the court that plaintiff, Sarah W. May, be and she is hereby entitled to, and is the owner of a homestead interest in and to lot 1 in block 20 in the Railroad Addition to the town of Wentzville, St. Charles county, and that in addition thereto she be and is hereby entitled to, and is the own-

er of an undivided one-fourth interest in fee simple in and to said premises.

"It is further considered, ordered and adjudged by the court that defendant Claudia May be and she is hereby entitled to, and is the owner of an undivided three-fourths interest in fee simple in and to said lot 1 in block 20 in the Railroad Addition to the town of Wentzville, St. Charles county, subject, however, to the homestead interest herein before adjudged in favor of plaintiff Sarah W. May; and the court decrees partition of said premises in accordance with the rights of the parties as hereinbefore determined.

"It is further considered, ordered and adjudged by the court that said lot 1 in block 20 in the Railroad Addition to the town of Wentzville, St. Charles county, is not susceptible of division in kind among the parties in interest without great injury to the owners thereof, and the appointment of commissioners to divide said real estate in kind between plaintiff Sarah W. May and defendant Claudia May and to report the advisability and practicability of a partition in kind of said real estate between them, is hereby dispensed with. It is therefore considered, ordered and adjudged by the court that so much of said real estate above described as is situated in St. Charles county, to-wit, lot 1 in block 20 in the Railroad Addition to the town of Wentzville, be sold by the sheriff of said St. Charles county, for cash in hand, on some day during the regular March term, 1903, of the circuit court of said St. Charles county, in accordance with the laws governing such sales of real estate in partition, and that said sheriff make full, true and complete report of the sale of said real estate, and of his acts under this order to this court at its next regular term.

"It is further considered, ordered and adjudged by the court that upon the sale of said real estate aforesaid, the homestead interest herein before adjudged in

favor of plaintiff Sarah W. May be commuted to its present cash value.

"It is further considered, ordered and adjudged by the court that defendant, Claudia May, have and recover from the plaintiff Sarah W. May, the sum of fifty-five and forty-hundredths dollars together with interest thereon from August 13, 1896, at the rate of eight per cent per annum, and that the interest of said Sarah W. May, in and to said premises aforesaid, or in and to the proceeds of the sale herein ordered to be made of the same, is hereby charged with the lien of this judgment for the above amount."

From this decree the plaintiff appeals. Her counsel contending here, as they did through the whole trial before the referee and the court below, that in determining the amount of moneys that came into the hands of plaintiff as guardian and curator of her daughter, and which with the proceeds of her interest in the farm which she inherited from her father and brother went into and constituted the purchase-price of the Louisiana property, the referee and the court were concluded by the settlements made by her as such guardian and curator. And this is substantially the only ground upon which a reversal of the decree is asked for. This contention is based upon the theory that such a settlement was a final settlement, as it purported to be, and if it was so in fact, then the trial court committed error in the admission of evidence *dehors* the settlement, and the decree is obviously erroneous, for no principle is better settled in this State than that final settlements of guardians, executors and administrators stand upon the same footing as other judgments of courts of competent jurisdiction and are conclusive as to all matters the proper subject of account included in such settlements and involved in the final settlement. [State ex rel. v. Gray, 106 Mo. 526; Smith v. Hauger, 150 Mo. 437; Patterson v. Booth, 103 Mo. 402; Garton v. Botts, 73 Mo. 274.]

But in order that a settlement shall have such conclusive force and effect it must be a final settlement made in accordance with the requirements of the statute in force at the time settlement is made. In this instance that statute required the plaintiff, as guardian and curator of her daughter for the purpose of making such a settlement, to make a just and true exhibit of the account between herself and her ward and file the same in the court having jurisdiction thereof and cause a copy of such exhibit, together with a written notice stating the day on which and the court in which she would make such settlement, to be delivered to her ward at least four weeks next before the first day of the term of the court at which settlement was, according to the terms of such notice, to be made, and only upon satisfactory proof of the delivery of a copy of such exhibit and written notice of such settlement to her ward was the court authorized to make a final settlement of her account with her ward. [R. S. 1889, sec. 5329.] This statute was not complied with in making the settlement in question, as is apparent on the face of the record and affirmatively shown by the evidence. The exhibit was not filed and the notice was not given as required by the statute, nor was there any waiver, if such a thing could be, by the appearance of the ward to the settlement. Hence, it was not a final settlement and cannot have the force and effect of one. [Mead v. Bakewell, 8 Mo. App. 549; Folger v. Heidel, 60 Mo. 284; State to use v. Hoster, 61 Mo. 544; Berkshire v. Hover, 83 Mo. App. 435.]

The last case was decided under the statute in force when this settlement was made, and whilst it is therein noted that the letter of that statute as a whole is not identical with the statute in force under which the previous decisions were made, it is aptly remarked that the spirit is the same and the construction is a fair and wholesome one. As a settlement without notice it could have no other or greater force than an annual set-

tlement, and as such would be merely prima facie evidence of the facts therein contained, evidence which might be rebutted and overcome as was overwhelmingly done in this case by competent and credible evidence.

Plaintiff's contention cannot be maintained, and but for the last paragraph of the decree, in which a judgment for $55.40 is rendered against the plaintiff and charged against her homestead, the decree would be affirmed. We do not perceive, however, upon what principle the plaintiff's homestead can be charged with an indebtedness to her ward in an action in partition. That indebtedness has nothing to do with the *res* of the suit. It was only with the ward's money that went into the land to be partitioned that the chancellor had to do in this action. Hence, for that error in the decree the same will be reversed, and the cause remanded to the Louisiana Court of Common Pleas with directions to that court to strike that paragraph from the decree and proceed with the case to final judgment.

All concur, except *Marshall, J.,* not sitting.