Mildred H. BEARDEN, Plaintiff-Appellant-Respondent,

v.

Mildred L. HODGE, Mildred L. Hodge, as administratrix of the Estate of David F. Hodge, Deceased, Thomas Williams, and J. C. Ellison, Jr., Defendants-Respondents-Appellants,

Marion L. Killian and Mary Killian, Husband and wife; George Edwards and Mary Edwards, or, if they, or either of them, be dead, the unknown consorts, heirs, executors, administrators, successors, assigns, devisees, donees, alienees, and immediate, mesne or remote voluntary and involuntary grantees of each of said persons who is deceased, Third-Party Defendants-Respondents.

No. 43545.

Supreme Court of Missouri.

En Banc.

Dec. 13, 1954.

M. Walker Cooper, Briney & Welborn, Bloomfield, James Glenn, Macon, for defendants-appellants.

Paul L. Hale, St. Louis, Clarence A. Powell, Dexter, for respondent, Mildred H. Bearden.

DALTON, Judge.

The plaintiff below and the defendants Mildred L. Hodge and Mildred L. Hodge, administratrix of the estate of David F. Hodge, deceased, have appealed from a decree determining the extent of plaintiff's title to described real estate in Stoddard County, fixing liens thereon for improvements and awarding third party defendants damages against defendant Mildred L. Hodge for breach of warranty.

On this appeal, plaintiff-appellant complains particularly of that part of the decree subjecting plaintiff's interest in the described real estate to certain liens for improvements, while defendants-appellants complain of the adjudication of title in plaintiff and of the judgment in favor of third party defendants.

Without quotation marks we shall adopt portions of an opinion prepared in Division One by Coil, Commissioner, and we shall continue to refer to the parties as plaintiff and defendant. Except as hereinafter stated, John A. Hodge is the common source of title.

John A. and Mollie Hodge had two sons, David F. and Hickman. Hickman died in 1926 leaving plaintiff as his sole heir. David died in 1947 leaving a widow (defendant Mildred L. Hodge) but no descendants. Third-party defendants Killian, husband and wife, were the grantees in a warranty deed dated January 1, 1944, wherein David F. and Mildred Hodge purportedly conveyed fee simple title to lot 21 in Asherville. Other defendants and third party defendants either disclaimed any interest or defaulted.

John A. Hodge died intestate in October 1937, survived by his widow Mollie, his son David, and his granddaughter, the plaintiff. He died owning the land in controversy, except lot 21 which he and his wife had owned by the entirety. There was no administration of his estate. Mollie, his widow, died in September 1942. There was no administration of her estate. There was no change in the title to the involved property prior to Mollie's death.

The land in controversy for our purposes is best described as three separate tracts to which we shall refer as the "122-acre tract," the "house and barn property," and lot 21. The "122-acre tract" is unimproved farm land; the "house and barn property"

includes a 6-acre tract on which there is a house, a 3-acre tract on which there is a barn, and an unimproved 90' x 60' "east" lot; lot 21 is a town lot. The "house and barn property" is contiguous to the "122-acre tract" except that a county road runs between the house and barn, and the two properties were operated as a farm.

In August 1934, John A. and Mollie Hodge executed their deed of trust to W. L. Tucker as trustee for Ralph and Nora Wammack, conveying the following described property to secure a $750 note: "The Southeast Quarter of the Southwest Quarter of Section Ten (10); The Northeast Quarter of the Northwest Quarter of Section Fifteen (15), the Southeast Quarter of the Northwest Quarter of Section Fifteen (15) except 7 acres off of the east side thereof and a strip of land containing about 9 acres on the east side of the southwest quarter of the northwest Quarter of Section Fifteen (15), all in Township Twenty-six (26), Range Eight (8) East, and containing in the aggregate 122 acres, more or less, and being the home place of the grantors." The land particularly described above included the "122-acre tract" only.

In October 1943 (subsequent to the deaths of John A. and Mollie Hodge), the deed of trust was foreclosed. David F. Hodge purchased at foreclosure for $875 and received a trustee's deed to himself and his wife (defendant) as tenants by the entirety. Both the trustee's advertisement of sale and the trustee's deed described the "122-acre tract" only. The description in neither the advertisement nor the deed contained the words "and being the home place of the grantors."

Defendant contends that the deed of trust conveyed to the trustee the "house and barn property" as well as the "122-acre tract" because of the words "being the home place of the grantors" and that the trustee's deed conveyed title to her and David to both the "122-acre tract" and the "house and barn property."

There was evidence to the effect that the "home place" by general reputation included the "house and barn property" as well as the "122-acre tract." The evidence further showed that the "122-acre tract" was of small value at trial time; one of plaintiff's witnesses thought the 122 acres would sell for $2,000. There was other evidence of a much lower value. There was no dispute that the 122 acres was extremely poor land.

Plaintiff contends that, irrespective of what the deed of trust conveyed, the fact remains that the trustee advertised and sold at foreclosure only the "122-acre tract" and that his deed to David F. Hodge and his wife (the defendant) as tenants by the entirety, conveyed only the 122 acres. Defendant contends, on the contrary, that, taking into consideration all the circumstances in evidence, it was the intention of the holder of the deed of trust and the trustee to sell, and of the purchaser to purchase, the "house and barn property" as well as the "122-acre tract"; that the trustee believed that the 122 acres described in the advertisement and in the deed of trust in fact included the "house and barn property." Defendant has not affirmatively sought a reformation or correction of the trustee's deed. She contends, in substance, that in this equity suit the intention of the parties should be given effect in order to arrive at a proper result.

The circumstances in evidence to which defendant points are these: that the "122-acre tract" was of relatively small value and the house and barn were in poor condition at the time of foreclosure; that shortly after the purchase by David Hodge at foreclosure, David and defendant executed a new deed of trust to the same beneficiary and the same trustee securing a note for $1,200, and that that deed of trust described the "122-acre tract" only; that $875 of the new loan was used to pay the old indebtedness and that the additional $325 was used to make improvements on the house; that defendant and her husband, subsequent to foreclosure, immediately went into possession of the "house and barn property" and claimed ownership under the trustee's deed and expended their funds in making improvements on the "house and barn property." Defendant urges that it is unreasonable to believe that the holder of the

first deed of trust, having covered in it the "home place" (which she says included the "house and barn property,") would make a new deed of trust for a relatively substantially larger amount to permit improvements to be made on the house, if he had not intended to take, and thought he was obtaining, a deed of trust on the "house and barn property" as well as the "122-acre tract"; and that the beneficiary would not have loaned additional money on the relatively worthless "122-acre tract" alone. Defendant says the holder of the note intended, and all the parties to the transaction intended, that the 122 acres specifically described included the "house and barn property."

Reference to the description of the 122 acres in the deed of trust, set forth above, discloses that part of that description is: "a strip of land containing about 9 acres on the east side of the southwest Quarter of the northwest Quarter of Section Fifteen (15)." The "house and barn property" consisted of about nine acres, and while it is not the nine acres described in the deed of trust, nevertheless, it may well be that the scrivener was confused as to the location of the house and barn and believed that they were on the nine acres referred to in the description of the 122 acres.

The advertisement of the trustee's sale shows: "By virtue of a deed of trust, * * * dated August 22nd, 1934, and recorded in book 69 at page 577 * * * I, the undersigned trustee, will at the request of the legal holder of said note sell * * * the land in said deed of trust described as follows: * * *." A description of the "122-acre tract" follows but, as noted, the words "and being the home place of grantors" are omitted.

And the trustee's deed contains this language: "Whereas, John A. Hodge and Mollie Hodge, * * * by their Deed of Trust, dated the 22nd day of August A.D. 1934, and recorded in the Recorder's office * * * in Book 69 at page 577, conveyed to the undersigned Trustee the real estate hereinafter described, * * * I * * * do hereby Bargain, Sell and Convey unto the said David F. Hodge, & Mildred L. Hodge, husband and wife, the said real estate in said Deed of Trust and notice of sale described, * * * to wit: * * *." Again, a description follows of the "122-acre tract" with no reference to the "home place."

■ We find it unnecessary to determine whether the description in the deed of trust was sufficient to include "the house and barn property", because all of the facts and circumstances relied upon by defendant are insufficient to permit the inclusion of any property other than that specifically described in the trustee's deed. The trustee's deed, under its terms, conveyed only the real estate specifically described therein, to wit, the "122-acre tract." We must and do hold that all other property was excluded and that the title to a one-half interest in "the house and barn property" remained vested in plaintiff, as an heir of her grandfather at the time of his death in October 1937, and that the other one-half interest remained vested in David F. Hodge, as an heir of his father. No change of possession of this excluded property resulted from the foreclosure of the deed of trust. Defendant and her husband, who were in possession of the excluded property at the time of the foreclosure and sale of the 122-acre tract, remained in the possession thereof.

■ Upon the death of David F. Hodge in 1947, plaintiff took title to his one-half interest in "house and barn property" as his heir at law, Section 468.010 RSMo 1949, V.A.M.S., subject to defendant's dower interest, to wit, a life estate in a one-third interest of the real estate of which her husband died seized. Section 469.010 RSMo 1949, V.A.M.S. The record fails to show any election by defendant to take under the provisions of Section 469.090 RSMo 1949, V.A.M.S. and no election is claimed.

In October 1938 (prior to both the foreclosure and the death of Mollie Hodge), David F. Hodge (defendant's deceased husband and plaintiff's uncle) was appointed guardian and curator for the then 13-year-old plaintiff. John A. Hodge at the time of

his death owned real estate other than that in controversy. The inventory filed in plaintiff's guardianship estate listed as an asset plaintiff's interest in certain particularly described real estate but did not include specifically the "122-acre tract," the "house and barn property," or lot 21. The inventory did list, however, "and other lands in said County which were inherited from her deceased grandfather, John A. Hodge." On October 11, 1938, all the following documents were filed and appointments and orders made: application for appointment as guardian and curator, the appointment, the inventory, appraisers to appraise the land specifically described in the inventory, a petition for the sale of that real estate at private sale, and the guardian and curator's report reciting the private sale of that real estate. On October 24, 1938, plaintiff's mother receipted to David F. Hodge, guardian and curator of plaintiff, for the sum of $415.45 in cash and notes "in full of amount due said minor on final settlement this day made and approved by the Probate Court of Stoddard County, and in accordance with an order of appropriation this day made to me for the support and education of said minor." And on the same date (October 24, 1938) David F. Hodge, as guardian and curator, filed what purported to be his first and final settlement. On November 1, 1938, the probate court approved the "first and final settlement" and discharged the guardian-curator.

■ Plaintiff contends that the purported "final settlement" had only the force and effect of an annual settlement; that the court's order approving the "final settlement" and discharging the guardian-curator was void; and that, therefore, David F. Hodge was plaintiff's guardian and curator at the time he purchased "the 122-acre tract" at the foreclosure sale. We think this contention must be sustained.

The provisions of RSMo 1929, Sec. 430, Section 457.580 RSMo 1949, V.A.M.S. provided for final settlements by guardians and curators upon cessation of the authority of such guardian or curator, whether by revocation, resignation, or the majority of the

ward; that a four-weeks' written notice of intention to make final settlement be given the ward or the successor guardian or curator as the case might be.

It is apparent on the face of the probate court records in evidence that a final settlement was not made in accordance with the requirements of the statute then in force. The fact that only 21 days intervened between the appointment and the discharge of the guardian-curator made the statutory notice to the ward impossible. The records also show that the ward had not attained her majority and that the guardian-curator's authority had not been revoked nor had he resigned. In addition, the records show that there were assets listed in the inventory ("other lands * * * which were inherited from her deceased grandfather") which were unadministered at the time of the purported final settlement. For all these reasons, there was no final settlement and the court's order approving the "final settlement" and discharging the guardian-curator was void and subject to collateral attack. May v. May, 189 Mo. 485, 502, 88 S.W. 75, 79; State ex rel. Knisely v. Holtcamp, 266 Mo. 347, 368, 372, 181 S.W. 1007, 1012, 1013. It follows that David F. Hodge was in fact plaintiff's guardian and curator at the time of his purchase at foreclosure.

■ Subsequent to the death of John A. Hodge, and at the time of the foreclosure sale, plaintiff and David F. Hodge were cotenants of the "122-acre tract" and the "house and barn property" by reason of being the sole heirs of John A. Hodge. And, as we have held, David F. Hodge was then the guardian and curator of plaintiff, his niece. So that, at the time David F. Hodge purchased the "122-acre tract" at foreclosure and received the trustee's deed to him and his wife (defendant) as tenants by the entirety, those grantees, in the absence of fraud or collusion, received the legal title to the "122-acre tract" subject to the equitable right of plaintiff (after she had attained her majority) to pay to her cotenant, guardian-curator-uncle, her proportionate share of the money paid by

him at foreclosure, and to obtain a deed to a one-half interest. This, because David F. Hodge as his cotenant's guardian and curator could not purchase a title at the foreclosure sale to the exclusion of the interest of his ward. He, therefore, took title in trust for plaintiff, who could thereafter elect to participate in the benefits of his purchase by contributing within a reasonable time her proportionate share of the purchase money. Martin v. Martin, 352 Mo. 1243, 1251(1), 181 S.W.2d 544, 548; Willoughby v. Brandes, 317 Mo. 544, 297 S.W. 54; McMichaels v. Reece, 194 Mo. App. 363, 366, 190 S.W. 51, 52. (We need not discuss the question of whether this same result would obtain irrespective of guardianship; that is, simply by virtue of either the fact that David F. Hodge was plaintiff's cotenant or that he was plaintiff's uncle as well as her cotenant.)

Plaintiff attained her majority on December 9, 1944. Defendant was appointed administratrix of her husband's estate on October 23, 1948, and this suit was filed on June 29, 1949. Plaintiff's petition alleged that she "is ready, willing and able to pay to defendants Mildred L. Hodge and Mildred L. Hodge, Administratrix, whatever expense said David F. Hodge and Mildred L. Hodge, or either of them, have incurred in protecting the common title of David F. Hodge and Plaintiff, in and unto the farm, in whatever proportion the Court may determine the interest of this Plaintiff amounts to * * * that Plaintiff makes this tender, and stands ready and willing to deposit said amount of money with the Clerk of this Court, or pay it to defendants, as may be ordered by the Court." Defendant made no claim below and makes none here that plaintiff is barred by reason of delay after obtaining her majority in offering to pay her proportionate share of the purchase price. Thus, that question is not before us.

We hold therefore that plaintiff, upon payment by her to individual defendant of one half the purchase price at foreclosure, will become and be the owner of an undivided one half of the fee simple title to the "122-acre tract" and will be entitled to a deed thereto from defendant both as an individual and as administratrix. We further hold that individual defendant, Mildred Hodge, by virtue of having survived her tenant by the entirety, David, is the owner of the other undivided one half of the "122-acre tract." Upon redemption plaintiff may partition.

■ As to lot 21. The title to this lot was held by the entirety and it was not mentioned in the deeds of trust or trustee's deed. As stated, John A. Hodge died in 1937 and his wife, Mollie, died in September 1942. On January 1, 1944, David Hodge and his wife (defendant) conveyed this lot by warranty deed to third-party defendants, Marion and Mary Killian, for a consideration of $500. David Hodge and plaintiff were equal co-owners of this lot. It is apparent, therefore, that at the time of the conveyance to third-party defendants Killian, David Hodge held title to only an undivided one-half interest in lot 21. Thus, the warranty deed passed title to only an undivided one-half interest. It follows that plaintiff and third-party defendants Killian each own an undivided one half of the fee simple title to lot 21. The trial court so found, but adjudged that third-party defendants Killian had expended the sum of $250 "for improvements made in good faith on lot 21 and declares same a special lien in their favor against the interest of plaintiff in said lot, and defendants Killian are awarded the sum of $250.00 damages for breach of warranty against defendant Mildred L. Hodge." Third-party defendants Killian have not appealed.

■ Third-party defendant Mary Killian testified that she and her husband paid $500 for lot 21 and had expended $200 for attorneys' fees in defending their title in the instant suit; and, in addition, had expended some sums in necessary travel in this connection. It clearly appears, therefore, that the trial court had sufficient evidence before it upon which to award $250 damages to third-party defendants jointly against the defendant Mildred L. Hodge as an individual, for breach of warranty on third-party defendants' counterclaim. Inasmuch

as third-party defendants have not appealed, the questions of whether the judgment should also have been against defendant as administratrix, and whether the total amount of damages awarded is adequate, are not before us. We hold, therefore, that the judgment for $250 and costs against Mildred L. Hodge in favor of third-party defendants was proper.

As to the improvements made and taxes paid by third-party defendants Killian. It appears that a grist mill was on lot 21 and that thereafter David and Mildred Hodge converted the mill into a house. So that, at the time the Killians purchased, the lot was improved with a 3-room house and a small chicken house. Mary Killian testified that upon taking possession she and her husband papered the house twice, placed glass in windows and doors, placed a concrete foundation under the house, covered it with "rolled brick siding," built a screened front porch, painted the house, built a small chicken house and a brooder house, installed a garden fence, and had the flues repaired. She said that the total expended by her and her husband for the work above noted was $500, which did not include the cost of the second papering; and that the taxes were $3 or $4 a year. She further testified that she and her husband took possession (apparently immediately) after purchasing the property on January 1, 1944, and occupied it until August 1951. Thereafter they had rented it for the sum of $10 per month.

There was no direct testimony as to the reasonableness of the expenditures made for the work done or as to whether, and in what amount, the various items above noted permanently enhanced the value of the property. It is also true that plaintiff was not consulted by third-party defendants before the expenditures were made, because third-party defendants reasonably believed that they held fee simple title to lot 21. We agree with the trial court that these expenditures were made in good faith by third-party defendants under the belief that they owned the entire property. While we agree with plaintiff that the evidence as to the claimed improvements is not as definite and as clear as it should be in order that the amount for which plaintiff should be liable may be fully determined, nevertheless, we are of the opinion that the evidence was sufficiently definite to justify that portion of the decree which charged plaintiff with the total sum of $250, representing one half the enhanced value of the property by reason of the improvements and one half the taxes paid. However, third-party defendants should account to plaintiff for one half the reasonable rental value of the property since the filing of the third-party petition on January 2, 1951 (the only claim for rents and profits as to lot 21 made by plaintiff). Any balance due either plaintiff or third-party defendants Killian should be declared a lien on the one-half interest of the other, as the case may be. While the trial court correctly adjudged that third-party defendants Killian and plaintiff each own an undivided one half of the fee simple title to lot 21, the judgment should have further provided that defendants Thomas Williams and J. C. Ellison, Jr., and third-party defendants George Edwards and Mary Edwards, their unknown consorts, heirs, etc., have no interest in the real estate described as lot 21. Further, plaintiff alternatively sought partition of lot 21 between her and third-party defendants. We think that plaintiff is entitled to this relief and that partition of lot 21 between plaintiff and third-party defendants Killian should be made.

Plaintiff offered in her petition to pay defendants any "expense which the Court may determine she owes to them for protecting any of the funds or property of plaintiff"; she sought an accounting for the operation of "the farm" and an accounting of the proceeds of the personal property of John A. and Mollie Hodge which plaintiff claimed had been appropriated by defendant and David F. Hodge. Plaintiff also sought punitive damages against defendant, administratrix, in the sum of $2,000 plus reasonable attorneys' fees, on the ground that the acts of David F. Hodge, in permitting the deed of trust to be foreclosed, in purchasing at fore-

closure, and having the trustee's deed made to him and his wife, with the purpose of excluding the interest of his minor ward, were "wilful, deliberate and fraudulent." Defendant denied that plaintiff was entitled to any accounting because defendant claimed title to all the involved property (except lot 21 which had been conveyed to third-party defendants).

The trial court found that plaintiff was entitled to an accounting, and apparently attempted to make it on the evidence adduced at the trial. Plaintiff points out that good practice and procedure in a suit for an accounting is first to determine whether plaintiff is entitled to the accounting, and to call on defendant to account in a subsequent proceeding. Defendant claims that no necessity for a separate accounting was disclosed in that all the necessary information was before the court from which an accounting, if any was called for, could be made.

Plaintiff and defendant both adduced some evidence which was relevant on an accounting between the parties; and perhaps under other circumstances plaintiff would be in no position to complain that the accounting feature of the case was not conducted as a separate proceeding after an interlocutory judgment finding that plaintiff was entitled to an accounting. However, because the evidence in this record is insufficient and too indefinite to enable us to accurately determine the amounts of the items which should be charged against plaintiff and defendant, respectively, in order to enforce the equities which inhere by reason of the particular circumstances of this case, we think this case must be remanded for an accounting between plaintiff and individual defendant.

■■ Bearing upon the question of the adjustments which may be necessary between the parties is plaintiff's claim that the failure of David F. Hodge to prevent foreclosure, the subsequent foreclosure sale, the purchase by David F. Hodge of the "122-acre tract" and his occupancy and claim of ownership of this property and also of the "house and barn property" to the exclusion of plaintiff, were acts wilfully done in a studied effort to deprive plaintiff of her interest in these properties. We have examined the record carefully in this respect and we concede that there are some circumstances from which the inference could be drawn that David F. Hodge (and perhaps present individual defendant) did knowingly attempt to deprive plaintiff of her interest in the properties in controversy. However, the evidence, including these circumstances, is not sufficiently convincing to prove fraud on the part of David Hodge or defendant in connection with the foreclosure of "the 122-acre tract" or their purchase thereat, or of their continued exclusive possession of "the house and barn property." Upon a consideration of the whole record, it has not been established that David Hodge colluded with the holder of the deed of trust or the trustee to bring about the foreclosure, or that the foreclosure purchase price was wholly inadequate, or that his acts in purchasing and holding adversely to plaintiff were wilful and malicious. We believe on the evidence before us that David F. Hodge and individual defendant could have reasonably believed that their purchase at foreclosure extinguished plaintiff's interest not only in the property foreclosed, but in the whole property involved. Under the circumstances, and inasmuch as plaintiff's relief should be such as to place her as nearly as may be in the position she would have occupied had there been no foreclosure or adverse claims by others, we are of the opinion that the equitable considerations inherent in this particular case require a balancing of accounts between plaintiff and individual defendant. 68 C.J.S., Partition, § 139a, pp. 221, 222. As noted, however, the evidence in the record is not sufficient, and what evidence there is is too indefinite to enable us to accurately do this. We therefore set forth the broad principles which should control in the accounting to be made between the plaintiff and the individual defendant.

We have heretofore held that plaintiff is entitled to a deed to one half the fee simple title to the "122-acre tract" upon payment to individual defendant of one

half of $875, the price paid by David F. Hodge on foreclosure. In addition, individual defendant is entitled to receive from plaintiff: one half of the total taxes paid on this tract since foreclosure to the date of final judgment; one half the reasonable cost of any repairs made by her or David F. Hodge, between the foreclosure date and September 4, 1948 (date of plaintiff's demand for a statement of the amount defendant claimed from plaintiff as contribution to the expense of title protection), i. e., expense necessary to preserve the said property; and one half the reasonable cost of permanent improvements to the said property made by either David or individual defendant between the foreclosure date and September 4, 1948, to the extent that such improvements enhanced the value of the said property.

Plaintiff should receive from individual defendant one half the reasonable rental value of the "122-acre tract" from the date of the foreclosure to the time of final judgment, taking into account, in determining such reasonable rental value, the enhancement of the value of "the 122-acre tract," if any, brought about by permanent improvements made in good faith.

Any balance due either individual defendant or plaintiff as a result of such an accounting should be adjudged a lien upon the one-half interest of the other in the property.

As to the "house and barn property," which, as stated, includes a 6-acre tract where the house is located, a 3-acre tract where the barn is located and the unimproved "east lot." Upon the death of John A. Hodge in October 1937, title passed to plaintiff and David F. Hodge as tenants in common, subject to the homestead and dower rights of Mollie Hodge. Mollie died in September 1942 and David F. Hodge remained in possession until his death in 1947. Defendant, his widow, continued in possession and was in possession, claiming ownership at the time of the trial. The trial court found that plaintiff was the owner of this property as an heir of John A. and David F. Hodge, but found for defendant in the sum of $5,611.73 (after rents and profits were deducted) for improvements made in good faith. The said sum was declared to be "a special lien in favor of defendant upon all of the land awarded to plaintiff." The evidence in the record is wholly insufficient to support an award of such an amount and the evidence is directed to the cost of improvements, expenses and expenditures without regard to any benefits conferred or the extent to which such improvements enhanced the value of the property. Plaintiff, as appellant, contends that a cotenant, who is in exclusive possession of real estate and who denies that his cotenant has any interest therein and who, without an agreement or the consent of his cotenant, places improvements on the common property, cannot compel his cotenant to contribute to such expenditures. She further insists that the Court erred in decreeing that the full amount of money expended by the cotenants David F. Hodge and Mildred L. Hodge, on the house property, should constitute a lien, not only on plaintiff's interest in the land upon which the house was located, but also on her interest in the 122 acres, the barn property, the east lot and lot 21 of the Town of Asherville.

As stated, plaintiff owned a one-half interest in the house and barn property prior to the making of the improvements and she inherited the other half interest from David F. Hodge in 1947 after the improvements were made, but subject to defendant's dower interest therein. The improvements were made upon property used in connection with the 122-acre tract in which David F. Hodge owned a one-half interest prior to the foreclosure and, after October 1943, David and defendant owned the same interest by the entirety. The evidence is sufficient to establish that permanent improvements were made in good faith and upon property which defendant and her husband in good faith claimed ownership. Defendant is entitled to receive one half the total taxes paid on the house and barn property and one half the reasonable cost of permanent improvements made upon this property from the death of Mollie Hodge to the institution of this action, that is, to the extent that such im-

provements enhanced the value of the property. Plaintiff should receive from defendant one half of the reasonable rental value of the property from Mollie Hodge's death to the date of final judgment in the cause. While plaintiff took title to a one-half interest in this property upon the death of David F. Hodge as it was then improved, she took this interest subject to the dower and homestead rights of the defendant, the widow of David F. Hodge. On the accounting, any balance due defendant (for permanent improvements enhancing the value of plaintiff's half interest and taxes paid) over and above the one half of the reasonable rental value of the premises, should be declared a lien upon plaintiff's interest in this particular property.

The judgment is reversed and the cause remanded with directions to proceed as herein directed, and thereafter to render final judgments in accordance with the views expressed in this opinion.

ELLISON, HYDE, HOLLINGSWORTH and LEEDY, JJ., and ANDERSON, Special Judge, concur.