HON JAMES BARRETT,  
HON. TIMOTHY P. REDFIELD, } ASSISTANT JUDGES.  
HON. JONATHAN ROSS.

---

JOHN M. BANNISTER, GUARDIAN, *v.* FOSTER L. BANNISTER, APPELLANT.

*Guardian and Ward.   Guardian's Account.   Parent and Child.*

Where the father of a minor had been appointed guardian of said minor, made a contract with him by which he was to sell him his time during the remainder of his minority, and resigned his trust, and another guardian was appointed, and the new guardian, after consulting with his ward, carried out the contract previously made between the father and his son, and paid the father for said time according to the contract, it was *held* that the amount of said payment could not be allowed the guardian on the settlement of his account with the probate court, without his showing affirmatively that his ward is at least no worse off than if he had his money with interest on arriving at his majority.

APPEAL from the probate court for the district of Randolph, in the settlement of the guardian's account, and trial by the court, June term, 1871, PECK, J., presiding.

The plaintiff proved that the defendant Foster L. Bannister and his brother, Allen W. Bannister, were the sons of Sylvester Bannister; that previous to the 25th of November, 1865, the mother of the said Foster L. and Allen W. had deceased, and that subsequently to the decease of the said mother, Foster Lamson, the grandfather of the said Foster L. and Allen W., died, from whom the said Allen W. and Foster L. inherited some property and money, they being the lawful heirs of the said Foster Lamson as his grandchildren, the mother being the daughter of the said Foster Lamson; that after the death of the said Foster Lamson, the said Sylvester Bannister, the father of the said Foster L. and Allen W. Bannister, was appointed their guardian, to have the charge and custody of the property which they were to inherit from their grandfather, the said Foster Lamson, and that the plaintiff, the said John W. Bannister, became surety for him on his guardian bond; that the said Sylvester Bannister, the guardian, invested the money that his said wards inherited from their grandfather in land; that subsequently, and previous to the said 25th day of November, 1865, the said Sylvester, having arranged to leave the State, applied to the probate court aforesaid, for license to sell the said land of his said wards, and legal notice was given, and the time set for hearing was the said 25th day of November, 1865. The said Foster L. at that time was about nineteen years of age, and the said Allen W. about two years younger. And they had arranged with their father, the said Sylvester—he still being their guardian—to buy of him their time during the remainder of their minority, and to pay him therefor the interest that each of them had in said land, which was purchased with the money which they had inherited from their said grandfather. On the said 25th day of November, 1865, the said John M. Bannister, said plaintiff, applied to the probate court to be released from the bond of the said Sylvester, the guardian, and the probate court decided to release him when the said Sylvester should procure some other person in his stead, and the

said Sylvester being unable to procure other surety upon his bond, he was obliged to and did resign his said guardianship, and thereupon the said Foster L. and Allen W. appeared before said probate court, and requested said court to appoint the said John M. Bannister, their guardian, in the place of the said Sylvester discharged, and the said John M. Bannister was accordingly appointed their guardian to have the care and custody of their money, but not of their persons. And the court at the same time granted license to sell said land, which was sold agreeably to said license, and the share of each of said wards in the proceeds of said land was one hundred and sixty dollars forty-nine cents.

Upon the appointment of the plaintiff to be the guardian of said fund, the said Foster L. and the said Allen then requested their said guardian, the said John M. Bannister, to ratify and carry out the bargain and arrangement that they had made with their former guardian, the said Sylvester. And the said John M. Bannister, after deliberation and consultation with his said wards, and their said father, and believing from their representations that the arrangement would be beneficial to his said wards, then and there, on said 25th day of November, 1865, and pursuant to the request of his said wards, purchased of their father their time during the remainder of their minority, and took from him a written sale of their time, as follows :

"In consideration that my sons, Foster L. Bannister and Allen W. Bannister, have paid me by the hands of their guardian, the sum of one hundred and seventy-three dollars and sixty-two cents, being the amount received from the estate of Foster Lamson, deceased. I hereby give and grant to them the control and proceeds of their time from this date, till they severally attain the age of twenty-one years, in which to act and do for themselves, and to receive the proceeds of their wages, promising to claim no part thereof. S. BANNISTER.

"Randolph, November 25, 1865.
"Witness, J. R. CLEAVELAND."

It further appeared that the plaintiff, pursuant to said arrangement, actually paid to said Sylvester Bannister the sum expressed in said writing, and in the settlement of his guardian account he

claimed to be allowed said sum, and the probate court allowed the same, from which allowance the said Foster L. appealed.

It further appeared that from that time the said Foster L. had the entire control of himself, and received all earnings, and was in no way interfered with by his said father.

There was no testimony on either side to show whether the arrangement was an advantageous one in fact or not.

The court decided that the plaintiff, as the guardian of said Foster L., is chargeable in his guardian account for the sum so by him paid to the said Sylvester Bannister for the purchase of his the said Foster L. Bannister's time. To which the plaintiff excepted.

*Hebards*, for the plaintiff.

*P. Perrin*, for the defendant.

The opinion of the court was delivered by .

BARRETT, J. It seems to the court that the rules and reasons which have long prevailed, in charging a guardian like the one in this case with duty and accountability, require of the plaintiff something more than is shown in this case, in order to discharge him in respect to the fund entrusted to him as guardian. The whole theory of statutory guardianship of property assumes the incompetency of the ward to take care of and deal with his own property, to as great an extent, at least, as the common law assumes the incompetency of a minor to bind himself by contract. In this case the minor had no legal competency to contract with his father, so as to bind himself. By such bargain, the father, as against the minor son, had no enforceable claim to the money stipulated. It was not the province of the guardian to participate in such contract. It was for him to so deal with the fund as to be able to account for it when the ward had a right to call on him in that behalf. This did not accrue till he arrived at his majority. Prior to that, it was the very purpose of the law, in requiring the interposition of the guardian, to put the fund beyond the control and disposition both of the minor and his father, so that the ward

would be sure to have the full benefit of it on arriving at full age. In this case, the guardian virtually paid over the money to the ward during his minority, to be appropriated in fulfillment of a contract by which he was not bound. We think if the guardian in this case would claim his discharge in respect to the fund, he must show affirmatively that the ward is at least no worse off than if he had his money, with interest, on arriving at his majority. The cases in which it is held that the ward cannot keep the proceeds of the money, and have the money too, are not applicable in this case, for by the very theory the money went from him at once, and whether he would get any adequate return was wholly contingent, depending on his industry, business tact, and providence. So far as this fund is concerned, the result of this contingency is cast by the law on the guardian, and he must show himself well out of it, so far as the interest of the ward depends on such result.

Standing in such position, he has seen fit to come into court without any showing as to such result. As the transaction itself was an adventure of hazard, in which the guardian assumed the risk, it is impossible for the court to imply or presume that the result was not prejudicial to the ward, in reference to the fund entrusted to the guardian. This view in this case may have a feature of harshness, and this claim of the defendant may smack of meanness; but however this may be, we think the law requires the judgment to be affirmed.