# Annie R. Simon's Appeal.

A guardian, in this case, was allowed to retain $541.62 as compensation for the maintenance of his ward from the time she was four years old until she was nine, being the principal of her estate, which was pension money, received during that time.

The services of the ward, in household duties and attending a saloon, and the use of her pension money, received quarterly at the rate of $8 and $10 a month, held to be an adequate compensation for her support from the time she was nine until she was seventeen years old, when she left her guardian's house.

Simple interest was computed on the estate, in such case, from the time the ward left her guardian until final decree.

Where the guardian dies without stating an account, and costs are incurred by the default of the guardian, in stating the account, all of the costs will be placed upon the guardian's estate.

(Argued January 4, 1887. Decided January 31, 1887.)

January Term, 1886, No. 169, E. D., before MERCUR, Ch.J.,

GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ. Appeal from a decree of the Orphans' Court of Philadelphia County auditing the accounts of William C. Mayer, a deceased guardian. Reversed.

The appellant presented her petition in 1883, praying for a citation on the administratrix of her deceased guardian, to compel her to file an account. The court appointed T. L. Vanderslice, Esq., auditor, to state an account, who found the facts substantially as stated in the opinion of the supreme court. He also reported as to the services, rendered by the ward to the guardian, as follows:

"During the time of her residence with Mayer, she was made useful to him by assisting in household matters, and assisted in the drinking saloon attached to the house; but at what time her services began to be of real value to Mayer is not satisfactorily shown, and can only be inferred, for her size and strength would preclude the possibility of material usefulness certainly from her fourth year in 1863, to her tenth year in 1869.

"The testimony on this head was not satisfactory, prior to 1872; after this date until she left in the fall of 1876, a period of four years, the auditor finds that her services were not only valuable to Mayer, but were of a character that no parent of a girl should demand or permit, much less a guardian of an orphan child who had a certain income of $10 per month, intended and set apart by her government for her maintenance. During this period, and even when she attended school, she was compelled to arise in the morning at 6 o'clock to do her work, and also to work after school hours in the kitchen and barroom, and frequently was kept in the barroom until 12 o'clock at night, dealing out drinks and receiving the money."

In stating the account, the auditor found that the guardian received $125.87, on August 8, 1867; $415.73, on October 25, 1868, and $48 on each of the following dates: March and September, 1869, March, September, and December, 1870; and $24 thereafter each quarter until January, 1874, when he received $200, the pension having been increased to $10 a month; and $30 each quarter thereafter until June, 1875; and $28.67 on August 31, 1875, when the ward was sixteen years old and the pension ceased.

The auditor disallowed the claim for board and maintenance

of the ward, and reported that the guardian's estate was indebted to the ward $1,430.87.

On exceptions by the appellee, the court awarded $1,040 for board and maintenance of the ward, being $2 a week from May, 1864, the date of her father's death, to 1874, when, the court found, "her services were those of an ordinary servant, and fully paid for her clothing and board." The court therefore awarded $390.87 to the ward and ordered that she pay $100 of the costs of the auditor.

The assignments of error specified, *inter alia,* the action of the court in not sustaining the report of the auditor, in not allowing interest, and in placing part of the costs upon the appellant.

*Joseph L. Tull,* for appellant.—No guardian shall be permitted to reap a profit from the labor of his ward. Beam's Appeal, 96 Pa. 74.

Horton's Appeal, 94 Pa. 62, is almost identical with this case. No compensation was there allowed.

In Brown's Appeal, 112 Pa. 18, 3 Cent. Rep. 919, 5 Atl. 13, the court makes the distinction about the value of services rendered by minors in the families of their guardians, where labor in the household is required, and a poor family who could dispense with it.

The guardian placed himself *in loco parentis,* and had there been no estate of appellant, and had she worked for Mayer under the same circumstances, no court would, for a moment, entertain any claim she might make for compensation for the labor she performed; and when one cannot claim for services, the other is precluded from compensation for expenditures. Douglas's Appeal, 82 Pa. 169.

In Hughes's Appeal, 53 Pa. 500, Mr. Justice READ said, speaking of the guardian's duty: "If he neglects to put the ward's money at interest, but negligently and for an unreasonable time suffered it to lie idle, or mingles it with his own, the court will charge him with simple interest, and in cases of very gross delinquency with compound interest."

In Lukens's Appeal, 7 Watts & S. 48, the principle is stated that where a guardian shall trade with his ward's money, or be guilty of misfeasance or negligence, he will be charged with interest.

The appellant cannot be charged with any laches in seeking her rights, by waiting two years for her guardian to file his account.   Wall's Appeal, 104 Pa. 14.

Where the necessity for an audit is occasioned by the acts of the accountant, he must pay all the costs.   St. Joseph's Orphan Asylum's Appeal, 38 Pa. 535; Church's Appeal, 13 W. N. C. 264; Douglas's Appeal, 82 Pa. 169.

*James A. Flaherty* and *Wm. W. Wiltbank,* for appellee.— It was proper that Mayer should appropriate her pension to her support.   That is the theory of the pension laws.

A pension is not a premium; it is a support.   U. S. Rev. Stat. §§ 4695, 4702; U. S. Comp. Stat. 190, pp. 3233, 3241.

The pension goes to the guardian for the maintenance of the child.   U. S. Rev. Stat. § 4703; U. S. Comp. Stat. 1901, p. 3242.

Where the amount paid for the maintenance and education of minors is within such limits as ought to have been decreed upon application, it will be allowed upon settlement of the account. Billington's Appeal, 3 Rawle, 48; Shollenberger's Appeal, 21 Pa. 337; Smith's Appeal, 30 Pa. 397; Strawbridge's Appeal, 5 Whart. 568.

The orphans' court has rebuked applications of nervous guardians, for orders for maintenance.   Flade's Estate, 40 Phila. Leg. Int. 131.

In Douglas's Appeal, 82 Pa. 169, the guardian was a step-father, who had engaged to maintain the child.

In Horton's Appeal, 94 Pa. 62, and in Beam's Appeal, 96 Pa. 74, he was a connection, and indisputably stood *in loco parentis.*

OPINION BY MR. JUSTICE GREEN:

We find ourselves unable to agree with the learned court below in the conclusion reached in this case.   It appears by the findings of the auditor that the appellant was born in August, 1859, and that at about the same time in 1863 she was placed by her father with the deceased, William C. Mayer, upon what terms is unknown, as there is no testimony on that subject.

The appellant's father was killed in battle in May, 1864, and the appellant remained with Mayer thereafter until 1876, when she left.   In 1867, when she was eight years old and had been with Mayer four years, he, as her guardian, made application for arrears of pay and bounties and received on August 8, 1867,

from the United States, $125.87. He also received from the same source in October, 1868, $415.75, being arrears of pension money due his ward to that time. Thus when she was nine years and two months old he had received in his official capacity as her guardian $541.62 of her money, and had supported her after her father's death four years and five months. In the meantime he could have placed her in 1866 with her uncle William Schaess, who came from Germany and offered to take her and raise her without any charge for her maintenance, but he refused to do so. This offer was repeated in 1871 and again refused. He could also have placed her in one of the Soldiers' Orphan Schools in 1865, and she could have remained there until 1875 without any cost to her estate, but he did not do so.

The auditor finds as follows: "The whole testimony satisfies the auditor that the services which the girl rendered her guardian during the last six or seven years that she was with him, together with the use of her money which he received in various sums and which he or his estate has enjoyed during all these years, would be ample compensation for all that she ever received from him from August, 1867, (when her first money came into his hands) to the fall of 1876."

A careful examination of all the testimony taken before the auditor convinces us that the foregoing finding is justified by the evidence and fully warranted as a just and sound conclusion.

The auditor did not allow any compensation to the guardian for the boarding and maintenance of the ward for any time, not even for the time from May, 1864, to August, 1867, and it is possible that the correctness of his action in this respect might be sustained in view of all the circumstances. But we think that during these very early years of her life an allowance may fairly be made for her maintenance, and we have concluded to allow the $541.62 received up to October, 1868, as compensation for her support to that time. After that time the service which she undoubtedly rendered in his house and saloon and the use of her money, which he subsequently received, we regard as adequate compensation for her support until 1876, when she left.

As a guardian he was entirely at fault in never filing any account or obtaining an order of court for her maintenance, and he should account now for the money received after 1868 with interest on it from 1876. We therefore allow her the sum of $889.25 with interest from September 1, 1876, as the witness

Oedelstine testifies she left in August of that year. We cannot conceive of any reason for imposing upon the ward any part of the costs of this proceeding, the whole necessity for which was created by the default of the guardian.

The decree of the court below is reversed and the record is remitted, with direction that a decree be entered in favor of the appellant and against the estate of the guardian for $889.25, together with interest thereon from September 1, 1876, and all costs, including the costs of this appeal.