IN THE MATTER OF THE ESTATE OF ANNIE LIVERNOIS
(A MINOR). JULIA A. LIVERNOIS, CLAIMANT,
v. DAVID KING, ADMINISTRATOR, ETC.

*Guardian and ward—Allowance of final account—Parent and child
—Services of minor child—Support.*

1. Ordinarily the parent is entitled to the services of a minor child,
   but is also liable for its support and maintenance. These ser-
   vices and this support are considered as reciprocal, and there
   is no justice in allowing the parent (who is also guardian) a
   yearly sum for the care and support of the child, while at the
   same time in receipt of the child's services while at home, or
   its wages while working away from home.
2. In this case a guardian is allowed $25 per year for twelve and
   one-half years, for clothing, and making of same, for a child
   who was seven years of age when taken by the guardian, as a
   just remuneration in the absence of any itemized account of
   such expenditures.

Error to Wayne. (Brevoort, J.) Argued October 23
and 24, 1889. Decided December 28, 1889.

Appeal from allowance of guardian's final account by
circuit court on appeal from probate court. Allowed in
part and rejected in part. The facts are stated in the
opinion.

*Fraser & Gates,* for contestant and appellant.

*Willard M. Lillibridge,* for claimant.

CHAMPLIN, J. This is an appeal from an order allow-
ing a guardian's final account. The circuit court allowed
the account at $1,666.24.

I think the circuit judge was right in disallowing the
items of credits in the account of the guardian for pay-
ing Bushey for care of minor when sick; also one-half

expenses in moving house; and also for her board and wages while at Bushey's, and her wages while at Stark's. These items disallowed amounted to $202.30.

I further think the whole charge for care, maintenance, and support of the minor from November 8, 1869, to November 22, 1886, amounting to $1,600, should also be disallowed. The testimony shows that the guardian has had all the income and profits of the minor's share of the use of the real estate; that the guardian has received moneys as the avails of wood sold and rent of farm, as well as all the labor of her daughter until she was· married, in 1886. She neglected to give her a common-school education, but what services she has rendered, her mother, the guardian, has had the benefit of.

Ordinarily the parent is entitled to the services of the minor child, but the parent is also liable for its support and maintenance. These services and support are considered as reciprocal, and I can see no justice in allowing the mother $100 a year for care and support, while she at the same time was in receipt of her child's services while at home, or her wages while she worked away from home.

Her ward was sick with paralysis when she was nine years of age, but her mother did not expend her own means for physicians' bills, nor did she care for her. The attack was not permanent. She gradually grew better, and by the time she was ten she was troubled no more from it. The guardian, however, applied to and received a license from the probate court authorizing her to mortgage a parcel of land · belonging to her ward, representing to the court that Annie had been stricken with partial paralysis which confined her to bed, and under the care of a physician; that she had incurred a large debt for Annie, and she was still under the· care of a physician. Under this license she, on February 24,

1887, executed a mortgage to Charles A. Warren for $300, at 10 per cent. interest. She did not use this money for the purposes for which she obtained it, and only a portion of it for Annie's benefit. She produces receipts showing that she paid the physicians for attending Annie $33.50. An account was kept by her son of the expenditures of this $300, which shows that all that was expended for Annie's benefit amounted to $25.70. The rest she expended in various ways. Some she loaned out, some she used to purchase groceries, and some for oats and hay. She afterwards applied to the circuit court for the county of Wayne, and obtained permission to and did sell one of the lots belonging to her ward for $400, for the purpose of raising money to pay this same mortgage. The further item of June 3, 1880, credited to her for balance paid on the mortgage to C. A. Warren, must also be disallowed, and the interest thereon. The original item is $33.11, and the interest $16.40. She sold the lot to pay this mortgage to her son-in-law for $400, and the records in Wayne circuit court show that the grantee by the acceptance of the deed,—

"And in consideration thereof, undertakes and promises to pay and discharge the mortgage now being on said lot of land."

This lot was the same lot mortgaged to Warren.

The account, as filed by the guardian, shows that she has received cash belonging to the estate of her ward, $676.98, and that she has paid out cash, properly chargeable against the estate of her ward, $667.43. She has rendered no account of wood and square timber sold off from the Ecorse farm, which the testimony shows was considerable. Annie's share would be one-ninth.

The guardian credits herself with the following items:

Clothing and making same from Nov. 28, 1869, to Nov. 4, '84, 15 years, at $25 ............................. $375

Clothing and making same from Nov., 1884, to Nov., 1886, two years, at $50 ........................... 100

These items are not supported by proofs or vouchers. Twenty-five dollars a year for a child of the rank and station of this is exorbitant. She was not appointed guardian until 1874, and at that time Annie was seven years old. The circuit judge allowed for clothing and making from March 25, 1874, to November 8, 1884, at $25 a year, ten years and one-half; and for two years thereafter at the rate of $50 a year. Why a rest was made in 1884 does not appear, and I do not think any rest should be made at that point. It was doubtless worth more to clothe Annie the last six years than it was the first, when she was from seven to thirteen years old. But I think an average of $25 a year for the whole time, not including the charge for the wedding outfit, will, in the absence of any satisfactory testimony, and in the absence of any account of expenditures, be as near just as can be arrived at. I shall allow $312.50 for clothes and making, and disallow the excess in the above two items, amounting to $162.50.

I think all items of interest should be struck out of both sides of the account. The receipts and disbursements were nearly cotemporaneous, and they stood in open accounts; and also the item for one-half expenses of sidewalk in front of lot 60 should be disallowed.

In conclusion, I disallow all items for interest upon both sides of the account. I disallow the following items credited to the guardian:

Care, maintenance, and support of the minor from death of her father, November 8, 1869, to her marriage, November 22, 1886, less 1 year at F. X. Stark's, 16 years, at $100 per year........ $1,600 00

Clothing and making same from November 8, 1869, to November 8, 1884, at $25 per year, and ditto for 2 years at $50 per year, disallowed....    162 50

Paid V. Bushey, for care of said minor, when sick ..:............................................     30 00

| | |
|---|---|
| Paid one-half expense of moving house on said minor's lot 60 | 25 00 |
| Paid one-half expense of building sidewalk in front of lot 60, 72 feet | 8 82 |
| Paid balance of mortgage to C. A. Warren, recorded Liber 132, p. 302 | 33 11 |

The total amount of credits due to the guardian, and allowed her, is $990.21. The total amount of debits charged to her is $676.98. Balance due guardian, $313.23.

Let it be certified to the circuit and probate courts that the amount due the guardian, upon settlement of her final account, is the sum of $313.23. The appellant will recover costs of both courts.

The other Justices concurred.