ELSIE ACKERMANN, Respondent, v. ALBERT C.
HAUMUELLER, Admr. of HENRY HAU-
MUELLER, Deceased, Appellant.

St. Louis Court of Appeals. Argued and Submitted March 11, 1910.
Opinion Filed May 3, 1910.

1. **GUARDIAN AND WARD: Final Settlement: Conclusiveness.**
To disturb the force of a final settlement of a guardian's ac-
count, it must be attacked directly, and not collaterally.

2. ———: ———: ———: **Collateral Attack.** An action by a
ward against the administrator of the deceased guardian
for services rendered the guardian during the continuance
of the relation is a collateral attack on the final settlement
of the guardian, the judgment in that proceeding being con-
clusive as to all matters which the probate court might have
passed upon therein.

3. ———: ———: **Charge for Services Rendered Guardian by
Ward.** Services of a ward rendered to a guardian are assets
of the guardianship, claims for which may be adjudicated in
the proceedings for the final settlement of the guardian's ac-
counts.

Appeal from St. Louis City Circuit Court.—*Hon. Geo.
H. Williams,* Judge.

REVERSED AND REMANDED (*with directions*).

*Warren D. Isenberg* for appellant.

(1) A final settlement made in the probate court
is equivalent to a final judgment and can be vacated
only for the causes for which any other final judgment
can be vacated. This would be true of the judgments
fixing the appropriation for support which would in-
volve a consideration, necessarily of the earnings of the
ward, the amount of the estate, and his position in
society, and wants and necessities. Standard v. Lacks,
25 Mo. App. 69; State v. Roland, 23 Mo. 97; Barton v.
Barton, 35 Mo. 163; Boly v. Lake, 54 Mo. 200; Sheets

v. Kirtley, 62 Mo. 417; Miller v. Manger, 67 Mo. 247; Smith v. Sims, 77 Mo. 272. (2) The final settlement can be impeached only for fraud. Jones v. Brinker, 20 Mo. 87; Tourville v. Roland, 23 Mo. 95; Whittelsey v. Dorsett, 23 Mo. 236; Nelson v. Barnett, 123 Mo. 564; Smiley v. Smiley, 80 Mo. 44; Heitkamp v. Biedenstein, 3 Mo. App. 450. Final settlement can be impeached only by direct proceedings in equity to set aside for fraud, begun in the circuit court. State ex rel. v. Grey, 106 Mo. 526; Crowley v. McCrary, 45 Mo. App. 350. (3) The order fixing the allowances was an adjudication by the court considering the earnings and the surroundings and necessities, and covers the whole issue and becomes doubly final after final settlement. Reavis v. Reavis, 135 Mo. App. 199; Camden v. Plain, 91 Mo. 117.

*Alexander R. Russell* for respondent.

(1) The earnings or services of the ward do not constitute guardianship assets and their existence or value are not adjudicated by the final settlement of the guardian. Blancherd v. Illsley, 120 Mass. 558; Heilman v. Martin, 2 Ark. 158; Phillips v. Davis, 2 Sneed (Tenn.) 520; Bass v. Cook, 4 Porter (Ala.) 390. (2) A judgment of a probate court, in the final settlement of curators, administrators or executors, does not conclude matters not actually or properly included in such settlements. 2 Woerner's Am. Administration (2 Ed.), sec. 506; Black on Judgments, sec. 644; Fish v. Lightner, 44 Mo. 270; McPike v. McPike, 111 Mo. 216; Nelson v. Barnett, 123 Mo. 570; Bramell v. Adams, 146 Mo. 70. (3) No one, not even a father, is entitled to the earnings and services of an infant, unless he discharges the duty of a father in maintaining and supporting such infant. Gerber v. Bauerline, 17 Ore. 115; Doremus v. Lott, 49 Hun 284; Ream v. Watkins, 27 Mo. 516; Swift

& Co. v. Johnson, 138 Fed. 867, 1 L. R. A. (N. S.) 1161; Railroad v. Flemister, 120 Ga. 524; Thompson v. Railroad, 104 Fed. 845; McGarr v. Worsted Mills, 24 R. I. 447, 60 L. R. A. 122; McCarthy v. Corporation, 148 Mass. 550, 2 L. R. A. 608; Nugent v. Powell, 4 Wyo. 173, 20 L. R. A. 199; Railroad v. Smith, 93 Ga. 742. (4) The mere fact of consanguinity or the fact of living together under the same roof, or both together, raises no presumption that the head of such family is entitled to the services or earnings of the others. Lillard v. Wilson, 178 Mo. 145; Castle v. Edwards, 63 Mo. App. 564; Moore v. Renick, 95 Mo. App. 202; Truesdail v. Truesdail, 72 Mo. App. 155. (5) As a matter of fact and of law, the deceased did not stand *in loco parentis* toward the plaintiff. Ream v. Watkins, 27 Mo. 516; Vonder Horst v. Vonder Horst, 41 Atl. (Md.) 126; Brinkerhoff v. Marselis, Extr., 24 N. J. L. 633; Marsh v. Taylor, 10 Atl. (N. J.) 488; Capek v. Kropik, 129 Ill. 509; Gerber v. Bauerline, 17 Ore. 115.

STATEMENT.—On the 19th of November, 1891, one Henry Haumueller was appointed general guardian of the person and estate of Elsie Ackermann, who was his granddaughter and at the time of the appointment of her guardian was about five years old. She and a brother, Edwin A. Ackermann, had lived with their grandparents ever since they were very young children. Their exact age is not given at the time of the death of their parents. It appears to have been between three and five years and Elsie appears to have lived with her grandparents before her grandfather was appointed guardian. When the respondent here, plaintiff below, became of age, her grandfather, as guardian, made final settlement of the affairs of his guardianship, having duly advertised, and Elsie executed to him a receipt which is practically a release of all claims against him as guardian. This settlement was made in March, 1904. Henry Haumueller died September 5,

1905, defendant taking out letters and qualifying as administrator of his estate. Shortly afterwards plaintiff presented a demand in the probate court of the city of St. Louis against defendant, as administrator of the estate of Henry Haumueller, in which she demanded an allowance and pay for services claimed to have been rendered by her to her grandfather, Henry Haumueller, as housekeeper, from March, 1900, to October, 1903, inclusive, fourteen months at thirty dollars a month, a total demand of $1320. Elsie was between thirteen and fourteen years old in March, 1900. It appears from the evidence in the case that during the minority of Elsie there was never any express contract between her and her grandfather to pay her anything for her services but when she arrived at the age of eighteen, by agreement between them, he commenced paying her ten dollars a month; how long he paid her does not appear, but there is no pretense or claim that he owed her anything for services rendered after October, 1903. In the settlement of the accounts of the grandfather as guardian and curator, it is admitted that he took and was allowed credit for ten dollars a month for the care and maintenance of Elsie until she became fifteen years of age, and after that until she arrived at the age of eighteen, he credited himself in his final settlement and was allowed fifteen dollars a month as guardian for her care and maintenance, and it is also admitted that in making his settlements, he had never charged himself or credited his ward for any services. On the hearing on the claim, the probate court allowed plaintiff $660, classifying it as in the fifth class of demands against the estate of Henry Haumueller. The administrator appealed from this to the circuit court and in that court filed an answer setting up the appointment of Henry Haumueller as guardian and his qualification as such and that Elsie was the granddaughter of Henry and that he acted as grandfather and as guardian in his conduct toward plaintiff until he was finally

discharged as guardian March 7, 1904; and averring that the period for which the compensation for services is now claimed was covered by the final settlement and was part of the period of time during which Henry Haumueller was guardian of Elsie, and it is averred that by reason of the guardianship and the relation of guardian and the final settlement of the accounts of the guardian and acknowledgment of satisfaction and of the correctness of the same, Elsie is now estopped to dispute "in this manner the correctness of said account." That during the time covered by the claim of Elsie, she was a minor and her grandfather was acting as her guardian and she was living with and being cared for as a member of the family of Henry and that Henry from time to time, as guardian of the ward had allowances made for the support and care of Elsie, and it is pleaded "that in having these allowances made the court will be presumed to be and was in full knowledge of all the facts and took into account and will be presumed to have done so, the services, if any, and the value thereof, if any, rendered by said ward to said guardian in fixing the allowance for the care, maintenance and support of said ward." The answer further pleads the settlement and the discharge in bar of this action, alleging that the plaintiff "cannot recover in this suit without first having instituted a suit to set aside the final settlement herein alleged to have taken place." There was a reply to this, generally denying all the averments of fact but at the trial the facts were practically admitted or evidence given tending to prove them. The defendant objected to all testimony, duly saving exceptions, and standing on the plea of the bar raised by the judgment of the probate court in approving the final settlement.

At the conclusion of the evidence the court gave two instructions at the instance of the plaintiff and refused all those asked by defendant. At the close of plaintiff's testimony and at the close of the case, defendant demurred to the evidence and asked for instructions

directing a verdict in his favor which were refused, defendant saving exceptions, and the jury returned a verdict for plaintiff in the sum of $1100 principal and $197 interest, a total of $1297, and judgment went accordingly from which defendant, filing a motion for new trial, which was overruled and exceptions saved, has duly perfected an appeal to this court.

REYNOLDS, P. J. (after stating the facts).—In the view that we take of this case it is unnecessary to examine into the instructions or to set out the evidence any further than we have done. It may be re-peated that it was stipulated on the trial as an admission in the case that Henry Haumueller was the guardian of the plaintiff Elsie and that as guardian he had made final settlement of his accounts and had been discharged, and that the period for which services are demanded was embraced within his term as guardian.

Counsel for respondent has submitted a very elaborate and learned brief and argument, a large part devoted to a challenge of the abstract furnished by appellant. The points made against the abstract, as that was originally filed are correct, but subsequent to the filing of the motion and before submission of the cause, appellant inserted in the abstract printed pages covering the omitted recitals. This was done by leave of court and the abstract as presented when the case was submitted was without the defects complained of by the learned counsel for the respondent.

On the merits counsel for respondent make six propositions: First, that a former judgment will not bar a subsequent action between the same parties unless the subject-matter of the two actions be identical; second, the earnings or services of the ward do not constitute guardianship assets and their existence or value are not adjudicated by the final settlement of the guardian; third, the judgment of the probate court in the final settlement of curators, administrators or execu-

tors, does not conclude matters not actually or properly included in such settlements; fourth, no one, not even a father, is entitled to the earnings and services of an infant, unless he discharges the duty of a father in maintaining and supporting such infant; fifth, the mere fact of consanguinity or the fact of living together under the same roof, or both together, raises no presumption that the head of such family is entitled to the services or earnings of the others; sixth, as a matter of fact and of law, the deceased did not stand *in loco parentis* toward the plaintiff. In the view we take of the case the only points necessary to be considered for its determination are the first, second and third. Considering these, not separately nor in the order named, but together, for they all tend practically to one point, it may be conceded that a former judgment will not bar a subsequent action between the same parties unless the subject-matter of the two actions be identical. That, however, does not meet the question presented by this case. The judgment here relied upon by the defendant is a judgment by the probate court on the final settlement of the guardian, approving that settlement and discharging Haumueller as guardian. To disturb the force and effect of that and show that it is not conclusive in the present action, it must be attacked directly and not collaterally as here attempted. The law presumes that a final settlement of a guardian, like that of an administrator, includes all matters relating to the trust, and it allows such judgments on settlements to be attacked and opened up only by direct proceedings to surcharge and falsify or possibly by a bill in equity for fraud, omission or mistake. It is not necessary to determine here what is the appropriate remedy or mode of reaching it, it being sufficient to say, for the purposes of this case, that this present proceeding is a collateral attack; that in this action that judgment must stand as conclusive of all matters which the probate court might have passed

upon in that proceeding. Whether it did pass upon them is a matter that may be disposed of if that judgment is directly attacked. The authorities in this State on that are all one way. The question of whether the account or charges for services could and should have been included in the final or annual settlements depends on the further fact of whether such charges of the ward are proper matters of account by the guardian and as to whether they, as guardianship assets or of the trust for which the guardian is responsible. Counsel for respondent contend that the earnings or the services of a ward do not constitute guardianship assets and their existence or value are not to be adjudicated by the final settlement of the guardian. They cite in support of this Blanchard v. Ilsley, 120 Mass. 487; Heilman v. Martin, 2 Ark. 158; Phillips et al. v. Davis et al., 2 Sneed (Tenn.) 520; Bass v. Cook, 4 Port. (Ala.) 390.

Blanchard v. Ilsley can hardly be considered in point. It was an action for seduction and the question was whether the guardian as against the father was entitled to the services of the daughter. The court held that in a case of that kind the right of action was in the father and not in the guardian. In the subsequent case of Shurtleff v. Rile, 140 Mass. 213, which was an action on the guardian's bond, the Massachusetts Supreme Court held than in settling the guardians accounts and in determining his liability on his bond, the question of the value of the services was properly to be considered.

In Heilman v. Martin it is true that the Supreme Court of Arkansas held that the guardian and his sureties were not liable on the former's bond, deciding it, however, on the terms of the bond itself. But this can hardly be considered a determination of the proposition, because the court found that the party claiming to be guardian had never been legally appointed as such and that the bond given was void. We cannot, therefore,

consider this as an authoritative decision of any point before the court, but as *dicta*. But whether *dicta* or in decision, it is practically overturned by the decision of the Supreme Court of that state in the later case of Campbell v. Clark, 63 Ark. 450, 39 S. W. 262, a suit in equity to surcharge and correct the final settlement of the guardian. In this latter case it was held that when the ward lived with the guardian as a member of his family, receiving support on the one hand and on the other rendering ordinary household services required by parents of their children, such services will be presumed, in the absence of a clear showing to the contrary, to be a sufficient compensation for the board of the ward. In support of this the Supreme Court of Arkansas cite many cases, among others Folger v. Heidel, 60 Mo. 285.

In Phillips et al. v. Davis et al., it was held, in a bill in equity against the guardian and his sureties on his bond to enforce settlement by the guardian, that the guardian's charges for clothing, etc., and the children's claim to offset these for services and labor, were not properly to be considered in an action of that kind and that the sureties of the guardian were not liable on the bond for the services of the children. That does not meet this case.

In Bass v. Cook it is true that the Supreme Court of Alabama held that in a settlement of the guardian's accounts, an allowance would not be made in favor of the ward for services as an offset to charges for clothing and maintenance. But in Calhoun v. Calhoun, 41 Ala. 369, an appeal from the judgment of the probate court on the final settlement of a guardian's accounts, the court held that credits for services rendered were proper matters of account. So that we think that the weight of authority, particularly in the more modern decisions, as shown in case after case, involving the settlement of guardians and administrators, as well as the views of accepted textwriters, conclusively deter-

mine that whether in the course of passing upon the settlement itself or in proceedings to surcharge and falsify, or in equity to compel the administrator or guardian to make settlement, it appears that these matters of charges of maintenance and support as well as claims for wages and services have been considered and properly are adjudicated, and are treated as matters falling directly within the settlement of guardians with their wards. We think this will appear by reference to a few of the cases, in addition to those to which we have before referred.

In Armstrong's Heirs v. Walkup et al., 12 Gratt. (Va.) 608, which was a bill in equity for minors against their guardian for an accounting and settlement, the Virginia court took into consideration the question of services and labor performed in determining the liability of the guardian of the minors.

In Beam's Appeal, 96 Pa. St. 74, which was an appeal from a judgment of the Orphans' Court upon exceptions to a guardian's settlement, the respective charges for support as against labor and services were considered proper matters of account.

Montgomery v. Givhan et al., 24 Ala. 568, was a bill filed against the defendant to compel settlement of the estate of which he was executor as also guardian of plaintiff, and in that case the charges for support and maintenance were allowed to be offset by claims for services and labor performed by the ward.

In re Succession of Gross, 23 La. Ann. 105, where exceptions to the final settlement of the tutor were before the court, it was held that charges made by the tutor for the ward for support and maintenance were offset and their allowance denied because it appeared that the ward had rendered services equal in value to the amount claimed.

In the Tutorship of the Minor Heirs of Hollingsworth, 45 La. Ann. 134, following Hebert v. Hebert, Manning's Unreported Cases 214, both proceedings on

the settlement of the accounts of the tutor, as the guardian is called in Louisiana, it was held proper to consider, as offset to the claims for maintenance and support, the value of labor and services performed by the ward.

In Moyer v. Fletcher, 56 Mich. 508, on approval of the final settlement of the guardian it was held that it was proper to take into consideration as an offset to the claim for support which had been made by the guardian, the value of the services and labor performed by the ward. This was approved in the case of In re Estate of Mabel Ward, 73 Mich. 220, 1. c. 231.

In re Estate of Livernois, 78 Mich. 330, which was an appeal from an allowance to the guardian made by the probate court on final settlement, the Supreme Court of Michigan held that charges for support should be offset by value of services rendered by the ward.

Marquess v. La Baw, 82 Ind. 550, was a suit to set aside the annual and final settlements of the guardian. It was held that the guardian should be charged for the services rendered by the ward when he charged for board.

In Haydon v. Stone, 1 Duvall's Rep. (Ky.) 396, which was a suit in equity to compel the guardian to account, claims for labor and services were among the matters involved and alleged to be unaccounted for, and of which the court took cognizance.

In Clement v. Hughes, 13 Ky. L. Rep. 352, s. c. 17, S. W. 285, an action on the guardian's bond, it seems that items of services rendered were considered to be properly taken up in the settlement.

In Simon's Appeal, 19 W. N. C. 94, s. c. 8 Atl. 34, a proceeding instituted in the Orphan's Court to compel the administrator and guardian to file accounts of guardianship, the Supreme Court of Pennsylvania held that in stating the guardian's account items of value of services rendered were properly taken into consideration. All these cases treat the matter of claims for

services rendered by the ward as matters falling within the guardian's settlements.

That wages earned by the ward and coming into the hands of the guardian are of the trust estate, seems to be well established. In Bannister v. Bannister, 44 Vt. 624, 1. c. 627, it is said: "The whole theory of statutory guardianship of property assumes the incompetency of the ward to take care of and deal with his own property, to as great an extent, at least, as the common law assumes the incompetency of a minor to bind himself by contract." This statement was made in the determination of an appeal from the probate court on its judgment in the settlement of the guardian's account.

In Haskell v. Jewell, 59 Vt. 91, which was an action of debt on a judgment rendered by the probate court which it appears is the mode for enforcing payment of an amount found due on a settlement of the guardian with his ward, Judge WALKER, speaking for the Supreme court of Vermont (1. c. 93), says: "It is contended by the defendant that the county court" (to which the appeal had been taken from the probate court and from the county court to the Supreme Court), "was in error in holding upon the facts disclosed by the case that the defendant held money of the ward in his hands in trust or in a fiduciary capacity; and it is also contended by the defendant that the judgment of the probate court was simply for the debt which the defendant owed for the labor of his ward, and not for money or property held in trust or in a fiduciary capacity.

"We think this contention of the defendant cannot be maintained. It is unquestionably true, when the matter is considered in the ordinary sense of the term, and in view of the usual relations of debtor and creditor, that the defendant was the debtor of his ward for the work performed by him for the defendant during the time he was his guardian. But the law, in the matter of a guardian's indebtedness to his ward, wisely treats the debt of the guardian to his ward as paid to him in

his representative capacity, and as so much money of the ward in his hands as assets *de facto,* to be accounted for like other assets, because he cannot sue himself for the debt, or collect if of himself, as he could a debt due the ward which he holds against another person. Wages earned by the ward in the employ of his guardian, before and after his appointment, if unpaid, are universally held to be money assets in the hands of the guardian, and regarded in the law the same as money or other property received by the guardian for the ward from any other source, and as so much money of the ward in his hands at the time such debt for work became due, and he must account for it as such. This legal fiction of payment arises from the peculiar relations of the guardian and ward, and is adopted not only from considerations of policy, but for the purposes of justice and protection of the ward's estate. [Kinney v. Ensign, 18 Pick. 232; Tarbell v. Jewett, 129 Mass. 457; Lyon v. Osgood, 58 Vt. 707.]

"It follows therefore, that whatever sum was due from the defendant as guardian to his ward for wages, was money assets of the ward in his hands, of which he had control, and which he was bound to use and exercise for the benefit of the ward. His relation to and power over the assets necessarily made him the holder of the same as money held in trust or in a fiduciary capacity." The court also cites and quotes from the case of David v. Leahey, In Re, 58 Vt. 724, as deciding that money held by an administrator as assets of an estate is held in trust or in a fiduciary capacity and that the guardian sustains the same relation to the money of the ward in his hands as an administrator does to the money assets of an estate in his hands.

The Supreme Court of Alabama, in Kyle v. Barnett, 17 Ala. 306, where the ward sued his guardian in equity for settlement and to account in his settlement for profits, wages, etc., due the ward, held practi-

cally as had the Supreme Court of Vermont in the Haskell case, supra.

In 15 Am. and Eng. Ency. of Law (2 Ed.), p. 97, par. 5, the general doctrine is stated to be that for such reasonable labor as is incident to the ward's training in habits of industry or to his position in the guardian's family, the guardian is not liable to account to him; but if the labor entirely or partially compensated the guardian for the board furnished, it should be taken into account in fixing the allowance for such board and if the ward regularly works for the guardian so as to earn substantial wages, no doubt the guardian will be held liable to pay him therefor. In note 7 to this paragraph, under the title, "Ward's Labor Considered in Fixing Allowance for Board," cases are cited from Arkansas, Illinois, Indiana, Iowa, Kentucky, Louisiana, Michigan, Tennessee and Pennsylvania. We have examined all of these, quoting some of them above as sustaining the proposition to which they are cited; citing and quoting from a few of them only, to illustrate the proposition that matters of account for work and labor done and performed by the ward while in charge of the guardian are matters to be accounted for and taken up in an adjustment of the accounts and settlement of the guardianship in his dealings with the estate of the ward.

Schouler, Domestic Relations (5 Ed.), sec. 320, lays it down as a rule beyond question that the guardian of the estate of the minor, among other duties, collects the ward's dues "and is, in effect, the ward's trustee." Further along, however, he qualifies this to some extent by saying that the guardian's interest is not "precisely like that of trustees; for while the latter may sue and be sued in their official capacity, suits by and against infants are brought in the name of the ward and not the guardian." At section 321 of the same work it is said that guardians appointed under proper laws by the probate courts, like testamentary guardians, are more

like trustees. So far as the estate of the ward is concerned the guardian is in fact the trustee; "for he holds the legal estate for the benefit of another." At section 335, the text writer says: "The guardian has not the same right as a father to the personal services of the infant, where he does not undertake to stand *in loco parentis*, which he sometimes does. For as his duty to educate and maintain is limited by law to the ward's resources, and is not, like the responsibility of a parent, absolute, so his rights are those of a representative, who should seek to add to the trust fund in his hands, and not to his own private emolument."

There are in our State no authorities directly in point on the proposition here under consideration. But in all the cases that we have been able to find the same rule is recognized—that is, that on settlement of accounts of guardians, the value of the services of the ward is proper matter for consideration in connection with the guardian's settlements.

In Bombeck v. Bombeck, 18 Mo. App. 26, a controversy growing out of a citation issued by the probate court of Buchanan county to the defendant, as guardian and curator of the plaintiff, to appear before the probate court and make settlement, it was held that where a person occupying a position of curator had made collection of money belonging to the ward, even after the termination of the relation of guardian, he should be charged as guardian, it being held that notwithstanding the majority of the ward the probate court had jurisdiction to compel the guardian to make final settlement and to render judgment against him for the balance found in his hands.

In Gillett v. Camp & Wife, 27 Mo. 541, it is held that the matters of charges between guardian and ward for allowance for support and credit for services must be settled in the probate court; that the guardian's accounts should be settled in that court and that any ap-

plication for allowance and any offsets growing out of it must be included in the settlement.

In State to use of Hermann v. Miller, 44 Mo. App. 118, which was an action on the guardian's bond, the decisions up to that time are collected with great fullness as adjudications on the relation of guardian and ward and they all tend to the conclusion that these matters of wages, services, maintenance and support are all matters to be considered in the settlement of the estate by the guardian with his ward.

In May v. May, 189 Mo. 485, 88 S. W. 75, the court in a partition proceeding, passing upon the effect of an order on the final settlement of the curator, holds it shall be conclusive and a bar to the further examination of the correctness of the guardian's accounts "as to all matters the proper subject of account included in such settlement and involved in the final settlement." The settlement there referred to was held not to be a final one and hence open to collateral attack. But even at that it appears that the ground of attack of these annual settlements was failure to embrace credits to which the ward claimed she was entitled. The law being thus, we are of the opinion that the only manner in which plaintiff can have the matter here involved determined is by direct proceeding attacking this settlement, as by proceedings to surcharge and falsify the annual and final settlements, or otherwise. In no other manner can the matters here sought to be litigated be reached. In an appropriate proceeding the question as to how far the judgment on the settlement is conclusive, how far that judgment is a bar, how far the guardian, under the facts in the case, can be held liable for services, can all be settled. None of this can be done in this present proceeding, which, in effect, is a collateral attack upon the judgment approving the final settlement of Henry Haumueller as guardian. The judgment of the circuit court is reversed and the cause remanded with directions to that court to certify to

the probate court a dismissal of plaintiff's claim; this without prejudice to the right of the plaintiff to prosecute any other action on that claim which she may deem advisable. All concur.

